UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHNNIE E. ADDERLY III,

    Plaintiff,

v.                                Case No: 2:16-cv-611-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Johnnie E. Adderly III's Complaint (Doc. 1) filed on August 4, 2016. Plaintiff, proceeding *pro se*, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On June 26, 2014, Plaintiff filed an application for disability insurance benefits ("DIB") and an application for supplemental security income ("SSI"). (Tr. at 167, 286-89, 301-306). Plaintiff asserted an onset date of December 13, 2012. (*Id*. at 286, 301). Plaintiff's applications were denied initially on November 5, 2014, and on reconsideration on February 3, 2015. (*Id*. at 167, 168, 201, 202). A hearing was held before Administrative Law Judge ("ALJ") William G. Reamon on January 12, 2016. (*Id*. at 53-106). The ALJ issued an unfavorable decision on March 28, 2016. (*Id*. at 24-45). The ALJ found Plaintiff not to be under a disability from December 13, 2012, through the date of the decision. (*Id*. at 45).

On July 25, 2016, the Appeals Council denied Plaintiff's request for review. (*Id*. at 1-6). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on August 4, 2016. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 20).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2016. (Tr. at 26). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 13, 2012, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: affective disorder; lumbar degenerative disc disease, with mild stenosis and mild to moderate scoliosis without nerve root compression (20 C.F.R. §§ 404.1520(c) and 416.920(c)). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.* at 27).

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, as follows:

> This individual can occasionally lift/carry twenty pounds and frequently lift/carry ten pounds. He can stand, walk or sit for six hours in an eight hour workday. He can frequently climb stairs and ramps, ladders, ropes and scaffolds. He can frequently balance, stoop and crawl. He has no limitations regarding kneeling and crouching. He can understand, remember and carry out simple instructions. He

---

1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

can tolerate occasional interaction with the general public. He can tolerate work requiring occasional work setting changes.

(*Id.* at 28).

The ALJ determined that Plaintiff is unable to perform his past relevant work as a stage technician. (*Id.* at 43-44). In considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 44). Specifically, the ALJ determined that plaintiff was able to perform the following jobs: (1) garment folder, DOT # 789.687-066, light exertional level and unskilled; (2) plumbing assembler, DOT # 706.684-086, light exertional level and unskilled; (3) routing clerk, DOT # 222.687-022, light exertional level, unskilled. (*Id.*).[2] The ALJ concluded that Plaintiff was not under a disability from December 13, 2012, through the date of the decision. (*Id.* at 45).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff filed a three (3) page Memorandum in Support of a Favorable Decision. (Doc. 22). In the Memorandum, Plaintiff did not clearly delineate the issues. Generally, *pro se* pleadings are held to a less stringent standard than those filed by attorneys. *See Bryant v. Ruvin*, 477 F. App'x 605, 607 (11th Cir. 2012). From a careful reading of the Memorandum (Doc. 22), the Commissioner's Memorandum, and in light of this general proposition as to *pro se* filers, the Court construes Plaintiff's Memorandum to raise the following issues:

1) The ALJ erred in failing to find some of Plaintiff's physical and mental impairments severe at step two of the sequential evaluation;

2) The ALJ erred in failing to find that Plaintiff met Listings 12.04 and 12.08;

3) The ALJ erred in affording mild weight to Sheba Katz, Ph.D.; and

4) The ALJ erred in finding that Plaintiff is able to perform other jobs in the national economy.

(Doc. 22 at 1-3). The Court addresses each issue in turn.

### A. Whether the ALJ Erred at Step Two of the Sequential Evaluation

Plaintiff asserts that he suffers from degenerative disc disease with neuro compromise, lumber stenosis, scoliosis, bipolar disorder with psychotic features, PTSD, personality disorder, and delusional disorder. (*Id.* at 2). Plaintiff appears to argue that the ALJ erred in failing to find all of Plaintiff's impairments severe. (*Id.*).

The Commissioner responds that even if Plaintiff was diagnosed with additional impairments, those diagnoses – in and of themselves – do not demonstrate that these impairments were severe. (Doc. 25 at 5). The Commissioner also asserts that the ALJ found in Plaintiff's favor at step two by finding other severe impairments at this point in his decision and, thus, even if the ALJ failed to identify every severe impairment, this error is harmless as long as the ALJ considered all of Plaintiff's impairments in combination, which the Commissioner argues the ALJ did in this case. (*Id.* at 24-25).

At step two of the sequential evaluation, the severity of a claimant's impairments is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ is required to consider a claimant's impairments in combination, whether severe or not. *Id.* A severe impairment is defined as follows:

> A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities. . . . The determination of whether the claimant suffers from a severe impairment acts as a filter. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, while a claim is denied if the claimant does not suffer from a severe impairment, the finding of any severe impairment, regardless of whether it qualifies as a disability or results from a single impairment or combination thereof, is sufficient to satisfy the second step of the SSA's sequential analysis. *Id.* Nonetheless, beyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling.

*Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ found at step two that Plaintiff has the severe impairments of affective disorder, lumbar degenerative disc disease, with mild stenosis and mild to moderate scoliosis without nerve root compression. (Tr. at 26). Thus, even if the ALJ erred in finding that some of Plaintiff's mental or physical impairments were not severe, the ALJ satisfied the step two analysis by finding other impairments severe. *See Griffin*, 560 F. App'x at 841-42. Therefore, any error is harmless as long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairment. *Id.*

In the decision at the third step of the sequential evaluation, the ALJ considered Plaintiff's "impairments *singly and in combination* and finds that the claimant has not satisfied the requirements of any listed impairment." (Tr. at 27) (emphasis added). Further, when

7

determining Plaintiff's RFC, the ALJ stated that he considered all of Plaintiff's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* at 28); *see Griffin*, 560 F. App'x at 842 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (noting a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings)). In addition to these statements, the ALJ also considered the medical records of evidence relating to Plaintiff's mental health. (*See* Tr. at 27-28, 30-43).

Here, after identifying some of Plaintiff's impairments as severe, the ALJ considered Plaintiff's severe and non-severe impairments in combination. (*See* Tr. at 27, 28). Accordingly, the Court finds that even if the ALJ should have identified additional impairments as severe, the error was harmless because the ALJ fulfilled his responsibility by considering all of Plaintiff's impairments in the remaining steps of the disability analysis. *See Griffin*, 560 F. App'x at 842. Thus, the ALJ's decision is supported by substantial evidence as to this issue.

    **B.**  **Whether the ALJ Erred in Failing to Find That Plaintiff Met the Listings**

Plaintiff states the he "meets or equals the criteria for disability found in Listings 12.04 and 12.08." (Doc. 22 at 2). Plaintiff asserts that mental health treatment records document that he experiences "delusional and paranoid [thinking], psychomotor retardation, and limited attention resulting in marked restriction in maintaining social functioning and concentration, persistence and pace. (Exhibits 10F, 18F, 20F, 23F and Katz Counseling Attorney submitted, 11/23/2015)." (*Id.*). The Commissioner responds that the ALJ found that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria in that the ALJ did not find that Plaintiff had marked restrictions in two of the listed areas. (Doc. 25 at 8). Further, the Commissioner contends that the ALJ properly determined that Plaintiff did not meet Listing 12.04 or 12.08.

At step three, to meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The burden is on a plaintiff to show that he or she meets the listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a listing, a plaintiff must have a diagnosis included in the listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).

The 12.00 Listings – with the exception of 12.05 and 12.09 – consist of (1) "a statement describing the disorders addressed by the Listing;" (2) "paragraph A criteria, which are a set of necessary medical findings;" and (3) "paragraph B criteria, which list impairment-related functional limitations that are incompatible with the claimant's ability to do any gainful activity." *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 923 (11th Cir. 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A), 12.02, 12.03, 12.04, 12.06, 12.07, 12.08). Listing 12.04 also includes additional functional criteria, known as paragraph C criteria. *Id.* "A claimant can meet one of these Listings only if 'the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment

are satisfied.'" *Id.* at 923-24.[3] To meet the "paragraph B" criteria, a Plaintiff must have at least two (2) of the following: "marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." *Id.* at 924 (citations omitted). "'Marked' means 'more than moderate but less than extreme;' marked restriction occurs when the degree of limitation seriously interferes with a claimant's ability to function 'independently, appropriately, effectively, and on a sustained basis.'" *Id.* The definition for episodes of decompensation is as follows:

> Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). To meet the criterion of "repeated" episodes of "extended duration," a claimant must have three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.*

*Id.*

The ALJ found that Plaintiff has mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence or pace, and no episodes of decompensation of an extended duration. (Tr. at 27). The ALJ determined that because Plaintiff's mental impairments did not cause at least two (2) marked limitations or one marked limitation and repeated episodes of decompensation, each of an extended duration, then the "paragraph B" criteria were not satisfied. (*Id.*).

In making these findings, the ALJ relied on the rationale of the State agency psychological consultant, John Thibodeau, Ph.D., finding his opinion well-supported by the

---

[3] Here, Plaintiff argues that he met the "paragraph B" criteria by having marked restrictions in certain areas. (*See* Doc. 22 at 2). Plaintiff does not raise any issue as to the "paragraph C" criteria and, thus, the Court will address the "paragraph B" criteria issue only.

record.  (*Id.* at 27-28).  Dr. Thibodeau completed a Psychiatric Review Technique on January 5, 2015.  (*Id.* at 176-77).  Dr. Thibodeau found that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functions; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of an extended duration.  (*Id.* at 176).  In addition to citing to Dr. Thibodeau's opinion, the ALJ also supported his decision by citing Plaintiff's medical records that indicate Plaintiff was treated with medication, received mental health treatment, his substance abuse was in remission, and reported improvement for his hypomanic symptoms.  (Tr. at 28, 38-41).  Further, the ALJ considered Plaintiff's daily activities including his ability to use public transportation, go shopping, take care of a rabbit, attend appointments, take medications, attend church, have a girlfriend for two (2) years, and attend NAMI meetings.  (*Id.*).  Thus, the ALJ supported his determination that Plaintiff failed to meet the "paragraph B" criteria.

Moreover, the burden is on Plaintiff to show that his impairments meet or equal one of the listings.  *See Wilkinson on Behalf of Wilkinson*, 847 F.2d at 662.  To support his argument, Plaintiff simply states that he has records that establish that he experiences delusional and paranoid thinking, psychomotor retardation, and limited attention.  (Doc. 22 at 2).  A diagnosis alone is insufficient to establish that these conditions cause functional limitations.  *See Wood v. Astrue*, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n.6 (11th Cir. 2005)).  Further, Plaintiff appears to be relying on the records from Sheba P. Katz, Ph.D. dated July 7, 2015 to support his argument that his impairments met or equaled the listings.  (*See* Doc. 22 at 2; Tr. at 667-69).  The ALJ afforded Dr. Katz's opinion mild weight and, as discussed in the next section, that determination is supported by substantial evidence.

Accordingly, the Court finds that Plaintiff failed to meet his burden of showing that his impairments met or equaled Listing 12.04 or 12.08. Further, the Court finds that the ALJ's determination that Plaintiff did not meet a listing is supported by substantial evidence.

### C. Whether the ALJ Erred in Affording Dr. Katz's Opinion Mild Weight

Although unclear, it appears at first Plaintiff argues that he is unable to perform his past relevant work as his "psychiatric symptoms [ ] prevent him from maintaining the alertness, close attention, or coordination required of his past skilled or semiskilled work". (Doc. 22 at 2). This issue is moot because the ALJ found that Plaintiff was "unable to perform any past relevant work." (*See* Tr. at 43).

Plaintiff then asserts that the "opinion evidence of record confirms the functional limitations of Mr[.] Adderly." (*Id.*). The opinion evidence Plaintiff cites is that of Sheba Katz, Ph.D. (*Id.*). The ALJ afforded Dr. Katz' opinion mild weight. (Tr. at 41). Thus, the Court will construe Plaintiff's argument to be that the ALJ erred in affording mild weight to Dr. Katz's opinion. According to Plaintiff, Dr. Katz found Plaintiff had "marked limitations in understanding, remembering and carrying out simple instructions[;] marked limitations in interacting appropriately with the public, co-workers, and supervisors[;] extreme limitations in making judgment on simple work related decisions[; and] extreme limitations in responding appropriately to pressure or change in routine in a work setting[.]" (Doc. 22 at 2-3) (format altered). Thus, it appears that Plaintiff argues that Dr. Katz's opinion supported his inability to work. (*Id.*).

The Commissioner responds that the ALJ properly weighed the medical opinion of Dr. Katz when assigning only mild weight to her opinion. (Doc. 25 at 11-14).

12

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and. based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Id*. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

Whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Unlike treating physicians' opinions, non-treating physicians' opinions are not entitled to deference. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). "In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion." *Id.*

Turning to the threshold issue of whether Dr. Katz was a treating or non-treating source, according to Plaintiff's testimony, Dr. Katz saw Plaintiff only three (3) times. (*See* Tr. at 93). Thus, the nature and extent of the relationship between Plaintiff and Dr. Katz was not of such duration to constitute a treating relationship. *See Crawford*, 363 F.3d at 1158-59. Further, Dr. Katz indicated that Plaintiff was self-referred and requested a psychological evaluation for the purposes of obtaining Social Security. (Tr. at 699). Generally, a treating source is "defined as the claimant's own physician or psychologist who has provided the claimant with medical treatment or evaluation, and who has had an ongoing relationship with the claimant." *Pettus v. Astrue*, 226 F. App'x 946, 949 (11th Cir. 2007) (citing 20 C.F.R. § 416.902). A medical source is not a treating source if the relationship "'is not based on [the plaintiff's] need for treatment or evaluation, but solely on [the plaintiff's] need to obtain a report in support of [a claim] for disability'". *Id.* (quoting 20 C.F.R. § 416.902). Based upon the few number of visits and the reason for the visits, the Court finds that Dr. Katz is a non-treating source and, thus, her opinion is not entitled to the same deference as that of a treating medical source.

Here, the Court finds that the ALJ thoroughly summarized and considered Dr. Katz's medical records for treatment on June 22, 2015 and July 7, 2015 as well as Dr. Katz's Medical Source Statement of Ability To Do Work-Related Activities (Mental) dated July 7, 2015. (*Id.* at 39-40; 666-69; 691-700). The ALJ afforded mild weight to Dr. Katz's opinion that Plaintiff had marked and extreme limitations in the "paragraph B" criteria. (*Id.* at 40, 41). The ALJ found Dr.

Katz to be a non-treating source who mainly provided a recitation of Plaintiff's self-described psychological history. (*Id.* at 41). The ALJ also found that Dr. Katz's report contained no evidence of any psychiatric testing, but that she did recommend that Plaintiff seek formal testing. (*Id.*).[4]

In reaching his decision, the ALJ afforded great weight to the medical source opinions of the medical consultants for the Disability Determination Service. (*Id.*). One such medical opinion is that of John Thibodeau, Ph.D. whose opinion – which was adopted in large part by the ALJ – was vastly inconsistent with that of Dr. Katz. (*See* Tr. at 179-81). As stated above in the section concerning the Listings, in addition to relying on Dr. Thibodeau's opinion, the ALJ also supported his decision regarding the "paragraph B" criteria by citing to Plaintiff's medical records that indicate Plaintiff was treated with medication, received mental health treatment, his substance abuse was in remission, and reported improvement for his hypomanic symptoms. (Tr. at 28, 38-41). In addition, the ALJ also supported his decision as to the "paragraph B" criteria by considering Plaintiff's daily activities, including his ability to use public transportation, go shopping, take care of a rabbit, attend appointments, take medications, attend church, have a girlfriend for two (2) years, and attend NAMI meetings. (*Id.* at 28). These reports also contradict Dr. Katz's findings of marked and extreme limitations in the "paragraph B" criteria.

Further, in Dr. Katz's Diagnostic Formulation of June 22, 2015, Dr. Katz relied on Plaintiff's subjective recitation of the history of the events in his life. (Tr. at 699). Dr. Katz reviewed only the medical records that Plaintiff brought to the evaluation without citing to any

---

[4] The ALJ mistakenly stated Dr. Katz performed no testing. (Tr. at 41). Dr. Katz's medical records show she assessed Plaintiff's Working Memory using a "subtest from WJ-Cog-III." (Tr. at 700). The Court finds this error to be harmless because the ALJ considered the results of the test in the decision when noting that Plaintiff's, "[w]orking memory testing was in the low range (71)." (*See id.* at 40).

specific medical records to support her extreme limitations findings. (*Id.*). Similarly, at the July 7, 2015 visit, Dr. Katz again relied on Plaintiff's subjective background information and reviewed unspecified medical records supplied by Plaintiff. (*Id.* at 700). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." *Williams v. Astrue*, 416 F. App'x 861, 863 (11th Cir. 2011) (citation and internal quotations omitted). Here, Dr. Katz did not support her finding with specific citation to treating physician's medical records or other evidence of record that support the marked and extreme limitations she found. (*See* Tr. at 667-669; 695-96; 698-700). Further, Plaintiff failed to cite to any medical records from a treating source that supports these marked and extreme limitations.

The Court finds that the ALJ considered the opinion of Dr. Katz and demonstrated good cause to afford her opinion mild weight, even though Dr. Katz's opinion as a non-treating source is not entitled to deference. Accordingly, the Court finds that the ALJ did not err in affording mild weight to the opinion of non-treating source, Dr. Katz, and the ALJ's decision is supported by substantial evidence as to this issue.

**D.     Whether the ALJ Erred in Finding Plaintiff Able to Perform Other Jobs in the National Economy**

Plaintiff argues that he is unable to perform work activities even at a sedentary, unskilled level. (Doc. 22 at 3). Plaintiff claims he is unable to sit for 6 hours in an 8-hour workday; understand, remember, and carry out simple instructions; make simple work-related decisions; respond appropriately to supervisors, co-workers, or the general public; and deal with routine changes in a work setting. (*Id.*). The Commissioner responds that the ALJ properly reviewed and considered the medical evidence of record in determining Plaintiff's RFC. (Doc. 25 at 16). Further, the Commissioner asserts that the ALJ's hypothetical question to the vocational expert

included all of Plaintiff's limitations in the ALJ's RFC. (*Id.* at 15). Finally, the Commissioner also asserts that the ALJ properly relied on the vocational expert's testimony to determine that jobs are available in the national economy that Plaintiff can perform. (*Id.* at 15-16).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a plaintiff's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel*, 631 F.3d at 1180. "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d at 1242. An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284

F.3d 1219, 1227 (11th Cir. 2002)). However, an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

In the instant case, Plaintiff claims that he is more limited than his RFC determination. (Doc. 22). Plaintiff supports these claims by citing to his own Pain Questionnaire and to Dr. Katz's Medical Source Statement. (*See* Doc. 22 at 3). Plaintiff's Supplemental Pain Questionnaire is comprised of Plaintiff's own subjective statements as to his limitations without support from the evidence of record. (*See* Tr. at 362-64). Here, the ALJ thoroughly reviewed the medical evidence of record, considered Plaintiff's activities of daily living, considered Plaintiff's testimony, considered Plaintiff's Pain Questionnaire, and considered other evidence of record in determining Plaintiff's RFC. (*See id.* at 28-43). The ALJ cited to inconsistencies in Plaintiff's testimony when compared to the medical evidence of record and Plaintiff's own self-reports. (*Id.* at 41-42). The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found Plaintiff's statements concerning intensity, persistence and the limited effects of these symptoms not to be entirely credible. (*Id.* at 43). Further, as stated above, the ALJ afforded Dr. Katz's opinion mild weight and the Court found that the ALJ's decision to afford Dr. Katz's opinion such weight was supported by substantial evidence.

After review of the evidence of record and the ALJ's decision, the Court finds that the RFC determination is supported by substantial evidence of record. Accordingly, the Court determines that the ALJ did not err in formulating Plaintiff's RFC.

To determine if Plaintiff was able to perform other jobs in the national economy, the ALJ obtained the testimony of a vocational expert. (*Id.* at 99-104). The ALJ posed a hypothetical question to the vocational expert assuming an individual with Plaintiff's limitations. (*Id.* at 100-101). The ALJ then asked the vocational expert whether this individual would be able to perform other work in the national economy. (*Id.* at 101). The vocational expert responded that an individual with Plaintiff's RFC would be able to perform the jobs of garment folder, plumbing assembler, and routing clerk. (*Id.* at 101-102). The ALJ relied upon the vocational expert's testimony in determining that Plaintiff was able to perform other jobs in the national economy. (*See id.* at 44). The Court finds that the ALJ properly relied on the vocational expert's testimony in determining whether jobs exist that Plaintiff is able to perform. *See Winschel*, 631 F.3d at 1180.

In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence. The Court further finds that the ALJ did not err in relying on the testimony of the vocational expert to determine that there are jobs in the national economy that Plaintiff can perform. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence as to these issues.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 28, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties